No. 8222.

JAMES SURGET VS. P. W. CHASE, TAX COLLECTOR.

| 33 | 833 |
|----|-----|
| 45 | 395 |
| 33 | 833 |
| 49 | 425 |
| 49 | 430 |

The special tax of twenty mills (in excess of the ten mills constitutional limit) levied on the 25th of September, 1880, by the Police Jury of the Parish of Concordia, for the purpose of building a levee on Lake Concordia, is unconstitutional and illegal.

The proviso of Act No. 96 of 1877, prescribing that "on the written application of a majority in value of the tax payers of a Parish, the police jury shall be authorized to levy additional taxes, not in excess of five mills," is manifestly inconsistent with Article 209 of the Constitution and, therefore, repealed.

It is clearly the intention of the Constitution, that the proviso of Article 209, by which municipal taxes for works of public improvements, etc., may be levied beyond the ten mills limitation, should not be self-operative, and that the municipal authorities should not have the power to impose such additional and indefinite taxes, without legislative warrant.

APPEAL from the Ninth Judicial District Court, parish of Concordia. Hough, J.

Spencer & White for Plaintiff and Appellant:

First—It might be forcibly argued that under the Constitution of 1879 no taxes for the construction of the public levees could be imposed, except one mill for the State and five mills for the districts.

Article 213 requires the State to maintain "a levee system," and to that end authorizes a general tax of one mill on the State at large, and five mills on the alluvial portions of the levee districts. Article 214—Even these recognitions of the power to tax for the public levees, are hedged in by the restrictions and limitations: First—That the taxing power for levees, granted in articles 213 and 214, shall cease whenever the General Government shall assume permanent control and provide for the maintenance of the levees. Second—That the district levee tax shall be limited to the portions of the district subject to overflow. The struggles in the Convention over even these limited concessions is historic; and the particularity with which the subject of "levees" is mentioned and guarded, makes the omission of that word ominous in articles 209 and 242 when providing the purposes for which special taxes may be imposed in the parishes.

The argument is that the Convention, which so meagerly doled out power to the State and the districts on this subject—a body which refused the power to tax in the districts anything but lands subject to overflow, gave the parishes power to impose levee taxes, ad libitum, upon lowlands and highlands alike; so that in parishes where the majority resided in the swamps, these alluvial residents had a carte blanche to tax their upland neighbors for the sole benefit of themselves.

The animus of the Convention on this subject is unmistakable, and we venture the assertion that it never contemplated "levees" when it used the words "public improvements." A proposition to confer unlimited power on the parishes to tax the uplands for levee purposes, would never have been entertained if put eo nomine.

It is a proper case to apply the rule, expressio unius est exclusio alterius.

Second—The Constitution of 1879 vests the taxing power primarily in the General Assembly, and by the express terms of article 202 can only be exercised by parishes and municipal corporations "under authority granted to them by the General Assembly." This article is a mere consecration of the general rule of all American governments, as announced by all the law writers. See Cooley on Taxation, pp. 48, 49 and 51; see Burroughs on Taxation, section 128.

Third—Articles 202 and 209 of the Constitution are upon the same subject-matter, and must be construed together. So construing them, article 209 is a limitation on the General

53

Assembly; first, as to State taxes; and second, as to its "grants" of the taxing power to parishes and municipal corporations. There is nothing in the language of article 209 which in anywise excepts it from the rule of article 202.

**Fourth**—Hence, whenever and wherever the legality of a parish tax is drawn in question, the parish authorities must be able to show, not only that the Constitution would allow it, but also that the General Assembly has granted and delegated to the parish authority to levy it. At present the authority of the parish to levy taxes "to defray their general expenses" is found in the eighth paragraph of section 2743 of the Revised Statutes, limited by article 209 of the Constitution and Act 78 of 1880.

The only "grant" of power to levy the special taxes authorized by articles 209 and 242 of the Constitution, is found in Act 84 of 1880. If not granted in that act, it has never been granted, and the parishes are without power to levy them.

The "grant" cannot be deduced from Act 78 of 1880, which is merely prohibitory. That act does not say the parishes can exercise the taxing powers granted by articles 209, 214 and 242. It would be absurd if it did, for the tax contemplated by article 242 can only be levied by the General Assembly itself. Besides, to deduce it from that act would violate elementary principles of interpreting such statutes. See Cooley, Taxation, p. 209; Burroughs, Taxation, section 128.

Article 209 is not self-acting. Laws for its execution must be enacted by the General Assembly. It refers to the "election laws" only for the purpose of fixing of the qualification of voters, and provides no machinery for holding such elections.

**Fifth**—But even if the article 209 did directly confer on the parishes power to levy those special taxes, it is manifest that the General Assembly has power to further regulate the exercise thereof. This flows from the sovereignty of the State and the paramount authority of the General Assembly over the parishes. Cooley on Taxation, p. 51.

**Sixth**—Act 84 of 1880, by its first section, provides the machinery of all elections to impose special taxes, whether under article 209 or 242 of the Constitution.

The second section declares what majority shall be necessary to impose them when the improvements are purely parish and local.

The third section declares what majority is necessary where the work is more public in its nature and extends beyond the parish.

If the first section does not govern the mode of election under article 209 and under the second section, then it does not govern it under article 242 and the third section.

**Seventh**—The public State levee is not a local or parish work. It extends throughout the State. The Constitution, article 213, directs the State to maintain it as "a system," and article 214 puts the construction, repair and maintenance thereof under commissioners.

The parishes have no control over the public levee. It is a great State work, extending through but beyond the limits of Concordia.

It is admitted that the Lake Concordia levee is but a link in this great chain, and its building was quite as important to adjoining parishes as to Concordia. Concordia could only vote to aid it under third section of Act 84, and under article 242.

**Eighth**—But even if the work fell under article 209 and under the second section of Act 84 of 1880, the tax is void for non-compliance with that act in the election.

It is admitted that no petition signed by one-third of the taxpayers of the parish was presented, or ever made or signed, or published as part of the notice of election.

This petition must be signed by one-third of the property taxpayers, not one-third of the property taxpayers entitled to vote under the election laws, but one-third of all the property taxpayers, whether voters or not.

Nor is it shown that one-third of the property taxpayers voted for said tax, or indeed voted at all. It is only shown that 634 voted for and 174 against it. By what authority can it be said these were one-third of the property taxpayers in Concordia.

Nine-tenths of the taxable property in Concordia is owned by non-residents, minors and married women; and it was doubtless to give protection and voice to these taxpayers

having no vote, that the law required as a condition to levying the tax, that it must be petitioned for by one-third of the taxpayers.

These provisions of the Statute are mandatory. Cooley (p. 254) says: " When taxes have been authorized to be levied only after they have been petitioned for by a certain number of taxpayers, this is a condition precedent to any tax." See same, pp. 245, 246; Burroughs, section 128; Campbell County vs. Taylor, 8 Bush, Ky. 206.

*H. R. Steele,* District Attorney, and *Kennard, Howe & Prentiss* for Defendant and Appellee:

First—The questions in this cause concern (a) the power of the parochial government to protect its own property, and the property, lives and civilization of its citizens from destruction by overflow; and (b) the method by which, in a case of emergency, that power may be exercised in such a way as to compel the contribution demanded from the plaintiff.

Second—The statement of facts in the transcript makes a case of power in the parish of Concordia to do the work in question in any reasonable view of the levee laws from the earliest history of the State to the present time, and under the Constitution of 1879, now in force; and to levy the tax which is disputed by plaintiff. 13 La. 211, Acts of 1829, p. 102; 5 An. 403; 14 An. 70, Rev. Stat. 1856, p. 410, § 19; p. 501, § 118; R. S. 2743, par. 2; Act No. 33 of 1879, §§ 2, 3 and 10; Act 88 of 1880, § 1; R. S. 2743, par. 8; Cooley on Taxation, pp. 51, 475.

Third—The parish of Concordia having for many years been charged with the duty and endowed with the right to protect itself by levees and to lay taxes for this purpose, we next enquire as to the effect on these powers of the Constitution of 1879. An analysis will show:

(a.) That the parishes as they have existed for many years are recognized as local governments, with powers and duties which have been for many years prescribed by law. Articles 240 to 252.

(b.) That there is not a word in the instrument which undertakes to deprive the alluvial parishes of the power to protect themselves from inundation and to lay taxes for that purpose.

(c.) That the article 202 contemplates the exercise of the taxing power for any public purpose by the parishes under such existing laws as were adopted prior to January 1, 1880, or such as may have been adopted since; and *a fortiori* for such purposes and in such a way as article 209 of equal dignity and more special recital recognizes.

(d.) That article 204, if it limit any power of taxation, limits the power of the State as to levee taxes, referring probably to articles 213, 214 and 215, but does not limit the power of the parishes at all, and certainly does not nullify the recognitive proviso of article 209.

The rule *expressio unius exclusio alterius,* as invoked by plaintiff with reference to this article and article 213 does not apply. Parishes are not mentioned in either article. There being no *expressio* with regard to parishes there can be no *exclusio* as to them.

(e.) That article 209 is a limitation upon the existing power of the parishes to protect themselves from inundation; and like all limitations is necessarily self-acting or self-executing. State vs. Graham, 23 An. 402, 407. As to the special topic of public improvements it recognizes the power in parishes to protect their people and territory by making such as may be needful in the parish and by the parish. Full details are given. The moment they are complied with the check is removed and the power operates. There is no need for the General Assembly to intervene. Nor could the General Assembly impose a further condition or limitation when the people by organic law have established such as they deem sufficient. Cooley on Limitations, 63, 64.

(f.) That article 242 is not intended to nullify or in anywise to limit article 209, but is intended for another purpose, namely, to permit the General Assembly to authorize parishes to aid in the construction by some other person, natural or juridical, of works of improvement, such as canals, turn-pikes, railways and the like. It is under a different

rubric and refers to another matter. State vs. Nicholls, 30 An. 980, 987; Jones on Railway Securities. 99, 159, 229.

(g.) That articles 213, 214 and 215 establish a system of levee building by the State, either by a general tax of one mill, or district tax of five mills; which is limited in amount; which is, by article 215, temporary and provisional in its character, and which is admitted by the statement of facts in the instant case to have been inadequate in the emergency.

Fourth—An analysis of Act 84 of 1880 will show that it has really no effect to limit the power or nullify the action of the parish in the premises.

(a.) Its title refers to article 242 and not to 209. It refers to aiding other persons to construct works, etc., and not to work done by the parish itself; and the first, second and third sections use the same phraseology..

(b.) The first section contains a provision not required by either article 242 or 209; and which, if it have any validity in the premises, can only be meant as a means by which one-third of the taxpayers may stir up and compel an indifferent or recalcitrant police jury to act. If the jury be willing to act this special provision need not be used. And in any view containing no negative words, denouncing no nullity and granting no power which would not otherwise exist, it is directory merely. 9 An. 593; Cooley on Con. Lim. § 74 et seq.

(c.) The second section refers to aid merely, and does not comply with either article 242 or 209. It requires a majority vote of all taxpayers; whereas article 209 requires only a majority of those who have a right to vote at a political election and who actually do vote; and article 242 requires a majority vote of all the taxpayers without regard to age, sex, residence or the like, and a majority in numbers and in value.

(d.) The third section seems to comply with article 242, but has no reference to 209 or to the case at bar.

(e.) If the Act 84 have any relation to the case at bar, it must be construed in such a way as to make it constitutional and rational; and to do this it must be held that the requirement as to one-third of taxpayers in the first section is directory, and can at the most serve only to stir up and set in motion an inert or obstinate jury; that the work contemplated in the second section means such work as that in question here, and that the term "majority" in the same section means a majority of those who may vote. The Legislature cannot add to or take away from the conditions provided by the Constitution in article 209 in such a way as to paralyze or defeat the rights there recognized. Cooley, § 64.

Fifth—The plaintiff must make out a case by a preponderance of authority. In case of any doubt the action of the police jury will be held valid. Cooley on Limitation, § 69.

*Geo. S. Sawyer* on the same side.

*E. H. Farrar, amicus curiæ*, in behalf of the parish of Tensas, on the same side.

---

The opinion of the Court was delivered by

Poché, J. This case involves the constitutionality and legality of a special tax of twenty mills, levied by the Police Jury of Concordia, on the 25th of September, 1880, for the purpose of building a levee on the west and south sides of Lake Concordia in that parish.

Plaintiff complains that the levy of this tax violates the Constitution, limiting the power of municipal taxation for all purposes to ten mills on the dollar; that the Police Jury is inhibited by the Constitution from levying a special tax for the purpose of building, repairing or maintaining public levees, and that the action of the Police Jury, in submitting

the project of levying a tax for said purpose, was not warranted by any law authorizing such an election or providing the manner of conducting the same, in cases where such special taxes are authorized by the Constitution, and he proceeded by injunction to restrain the enforcement of this special tax on taxable property which he owns in the parish of Concordia.

For answer, defendant urges the necessity of the work for which the tax was levied, the inability of the State for want of funds to build the required levee, and alleges that the election, and all other proceedings in the levy of the tax, were carried on in strict conformity with the Constitution and laws of the State.

Plaintiff has taken the present appeal from the judgment of the lower court, dissolving his injunction with damages, and recognizing the constitutionality and legality of the special tax.

From a statement, agreed upon by the parties, we gather the following salient facts, which bear upon the issues presented by the pleadings:

First—That in addition to the tax in controversy, the following taxes have been collected in the parish of Concordia for the year 1880, and paid by plaintiff:

1st. The general State tax of ten mills.

2d. The district levee tax of five mills.

3d. The general parish tax of ten mills.

4th. A special parish judgment tax of ten mills.

Second—That the construction of the " Lake Concordia Levee" had become necessary to protect the parish from overflow by reason of the caving in of the old levee; and that the building of the work and the levy of a twenty mill special tax had been recommended to the Police Jury by a mass meeting held on the 16th of August, 1880, and numerously attended by taxpaying citizens of the parish, and that an election held for the purpose of authorizing the levy of such special tax had resulted in 634 votes for, and 174 votes against the ordinance; that said election was not predicated on a petition signed by one-third of the taxpayers of the parish, and that no such petition was published with the ordinance imposing such tax; and that the result of said election was promulgated by means of a subsequent ordinance of the Police Jury, who had not in the first ordinance provided for the means of returning of such election, or of showing that the ordinance had been carried by a majority in value as well as in number of taxpayers. It was finally admitted that the projected levee had been located by the State Engineers, constitutes a part of the public levee system, but that the State authorities declared that they were without funds to build such levee.

Defendant relies as authority in justification of the course of the Police Jury in this case, on the various acts of the Legislature, dated as far back as 1829, conferring to police juries full power, management and

Surget vs. Chase, Tax Collector.

control in the making and repairing of public levees. And he urges that the exercise of this power, in manner and form as was done in this case, is fully sanctioned by Art. 209 of our Constitution, which reads as follows:

Art. 209—"The State tax on property for all purposes whatever, including expenses of government, schools, levees and interest, shall not exceed in any one year six mills on the dollar of assessed valuation; * * * and no parish or municipal tax for all purposes whatsoever, shall exceed ten mills on the dollar of valuation ; *provided*, that for the purpose of erecting and constructing public buildings, bridges and works of public improvement in parishes and municipalities, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the property taxpayers of such parish or municipality entitled to vote under the election laws of the State, and a majority of same voting at such election shall have voted therefor."

And he contends that this article being self-operative, no legislation was needed to put it in operation.

Previous to the legislation contained in Act No. 20 of 1866, and Act No. 115 of 1867, the police juries in this State were vested with all powers touching public levees. But from that time to the date of the adoption of the Constitution of 1879, this power was absolutely withdrawn from them, and was never restored to them, with the exception of the power to repair and protect *completed levees*. No greater powers on the subject are conferred by Act 88 of 1880, which contains the last legislation on public levees. The object of this act, as expressed in its title, and shown in its text, was to invest the police juries of the several parishes with the management and control of all *completed public levees* in this State, and to regulate the manner in which the same may be cut for rice flumes or other purposes.

The great changes which were wrought on the condition of the country by the civil war, imperiously required the repeal of the legislation, under which the control of public levees had been lodged in the police juries, and the burden of building and maintaining the same had been imposed on the riparian owners on the Mississippi River, and other streams subject to overflows.

The legislation creating the Louisiana Levee Company and the various Boards of State Engineers, to whom were successively confided the control and management of these important public works, and by whom immense amounts of the State revenues were lavishly spent in the construction of levees, is a salient feature in the recent history of this State, and leaves no room to doubt the legislative intention on this subject.

Act No. 33 of 1879, which regulated the system at the time of the adoption of the Constitution, placed the control of levees in the hands of

a Board of Engineers, who had the power to locate and survey the works; of district commissioners, who levied the tax; and of the Governor, who had the power to let out the work. Under that law, police juries had no power to build levees, but were entrusted with the care and preservation of *completed levees.*

For the same reasons that policy was adopted by the framers of the Constitution, who are known, as a matter of history, to have handled this subject with great caution and with great misgivings, in view of the extravagance which had previously characterized the administration of the system, and of the conflicting interests growing out of the differences between the highland and the alluvial portions of the State.

By Art. 213 they required the establishment of a levee system in the State, and authorized a levy of an annual tax of one mill on all taxable property, to be applied exclusively to the maintenance and repairs of levees.

Art. 214 provides for the division of the State into levee districts, and for the appointment or election of levee commissioners in each district, who shall have supervision of the erection and repairs and maintenance of the levees in said districts, with authority to levy a tax not to exceed five mills on the taxable property situated within the *alluvial portions* of said district subject to overflow.

It requires no reasoning or authority to satisfy the legal mind that any legislation which would have attempted to confer to police juries the power to build public levees, and to levy special taxes for the costs of building levees, would be glaringly unconstitutional, and could not be enforced by the courts, unless the authority be found in Art. 209 or Art. 242, on which point we express no opinion now.

Construing these two articles in connection with article 215, limiting the duration of this system to the time when the Federal government would, as was then expected, assume permanent control of the levees in this State, plaintiff's counsel argue that no other taxes, but those provided in these two articles, could be imposed by the State or by the parishes for levee purposes. But the view which we take of this case does not require solution of this important question.

It is admitted by the defendant, both in the pleadings and in the statement of facts, that the "Lake Concordia Levee" form part of the public levee system created under the power granted to the General Assembly by the Constitution, and that the levee was located by the State Engineers. It cannot, therefore, be denied that the duty and power of building the levee were vested exclusively in the State authorities, who are shown, however, to have had no funds for the purpose. Hence, the Police Jury, in view of the imminent danger, and in order to avert a great public calamity, resolved to assume the duty of building the re-

quired levee, and to provide by levying this tax, for the means necessary thereto. In other words, the Police Jury levied this special tax in aid of a public improvement, originating with the State authorities, ordered and located by the State authorities, and required under the Constitution and the laws thereunder to be erected and maintained by the State authorities.

It, therefore, follows, as urged by plaintiff, that the only possible authority which can be invoked in support of the Police Jury's course in the premises must flow from the provisions of Art. 242 of the Constitution, which reads as follows:

Art. 242—" The General Assembly shall have power to enact general laws authorizing the parochial or municipal authorities of the State, under certain circumstances, by a vote of the majority of the property taxpayers *in number and value,* to levy special taxes in aid of public improvements or railway enterprises, provided that such tax shall not exceed the rate of five mills *per annum,* nor extend for a longer period than ten years."

Now, as the project of levying this special tax is shown to have been submitted to the vote of the majority of the taxpaying electors of the parish, and not to the majority of taxpayers in *number and value,* as imperatively required by that article, and as the election ordered for this purpose was not held in pursuance of Act No. 84 of 1880, which is conceded to be the enabling act of said article of the Constitution, defendant cannot invoke the authority of that article, and in fact repudiates any sanction from that source.

Hence, he relies exclusively on the powers derived from article 209, quoted in the first part of this opinion, and contends that it is self-acting.

It is not only admitted, but argued by defendant that, as yet, no legislation has been enacted which can be construed as an enabling act to Art. 209. Although in some of its provisions Act 84 of 1880 apparently refers to that article, its title indicates no such object, but in plain language, it refers exclusively to Art. 242. If the act intended to refer to Art. 209, it does not comply with the constitutional requisite, regulating the expression of the object of every act in its title, and such reference must in consequence be considered as unwritten. We, therefore, conclude that Art. 209, in so far as its proviso is concerned, has yet received no legislative interpretation, and stands without an enabling act.

In order to understand the intention of the Convention in framing this article, it must be construed in connection with Art. 202, which is the declaration of the fundamental policy of the whole instrument on the subject of taxation, and which is in the following words:

" The taxing power may be exercised by the General Assembly for State purposes, and by the parishes and municipal corporations, *under*

*authority granted to them by the General Assembly,* for parish and municipal purposes."

Under this article, we conclude that the Constitution vests the taxing power primarily and directly in the General Assembly, and that the taxing power, one of the highest attributes of sovereignty, can only reach the subordinate agents of the State, such as parishes and municipal corporations, through the channel and under the regulations of the Legislative department.

No words or language used in Art. 209 justifies the slightest suspicion that the Convention intended to depart from the sound general principle incorporated in Art. 202.

The article does not purport to be a grant of taxing power to either the State or municipal authorities, which grant is to be found in article 202, but it is, what it purports to be, a restriction of the taxing power in the General Assembly and in its grant of the taxing power to parishes and municipal corporations. And the exceptions contained in the proviso under which the limit of parish and municipal taxation can be increased in certain specified cases, must remain dormant and ineffective until rectified by legislative breath.

The conclusion that, if the powers therein conferred can be invoked as authority for the levy by the parish authorities of a special tax for the construction or building of a levee, as in the present instance, the power must be sanctioned by legislative action only, cannot be controverted.

It, therefore, follows that article 209 is not self-acting, and that the powers contemplated in its proviso having yet received no legislative sanction, cannot be exercised by the parish authorities, to whom they were not directly or primarily conferred.

We, therefore, conclude that the Police Jury, one of the subordinate agents of the State, had no legal mandate to proceed in the premises, and that its action and all the proceedings in its attempt to levy this tax, were without legal authority, clearly unconstitutional and, therefore, null and void.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the ordinance of the Police Jury of Concordia parish, levying a special tax of twenty mills for the construction of the Lake Concordia Levee, be declared unconstitutional, illegal, null and void, and that the defendant, as tax collector, be perpetually enjoined from collecting said tax, and that he be condemned to pay the costs of both courts.

## On Application for Rehearing.

Fenner, J. Giving all possible weight to the ingenious argument of defendant's counsel, so far as it sustains the proposition that, under

the legislation in force at the date of the adoption of the Constitution of 1879, the police juries of the parishes were vested with powers for the "repair, preservation and protection of levees," and that the work involved in this case fell within the proper scope of such powers, and on these points we announce that we will not hold ourselves concluded by any *dicta* in the original opinion, really or apparently contrary thereto,—the argument, nevertheless, entirely fails to show that, at that date, the police juries possessed any legislative authority to levy indefinite special taxes, in excess of ten mills for the execution of such powers.

On the contrary, by the terms of Act 96 of 1877, then in force, the parochial power of taxation, "for all purposes or under any pretext," was limited to ten mills on the dollar. The proviso to that act, reciting "that on the written application of a majority in value of the taxpayers of a parish, the police jury shall be authorized to levy additional taxes not in excess of five mills," is manifestly inconsistent with Art. 209, and therefore repealed.

Unless article 202 of the Constitution is to be practically nullified, the "taxing power" can only be exercised by parishes and municipal corporations, "under authority granted to them by the General Assembly." It is not necessary, under this article, that new legislative authority should be obtained in all cases. Antecedent legislative grants, not inconsistent with the Constitution, were continued in force by Art. 258; and hence police juries may continue to levy a ten mills tax without new legislative authority.

But it is imperatively necessary, that police juries, exercising the taxing power, should point to some valid "authority granted to them by the General Assembly," antecedent or subsequent to the Constitution.

No such authority exists for the levy of the special tax herein contested, with or without an election.

The proposition that Art. 209 is self-operating and confers directly upon the parishes the absolute power to levy unlimited taxes for the purposes therein specified, upon the vote of a mere numerical majority of the taxpayers, without reference to the value of the property represented, is certainly startling. If that were true, the power would not only dispense with legislative authority, but would be beyond legislative control, because the Legislature could not limit, or take away, power directly and expressly conferred by the Constitution.

The deplorable abuses, which might result, will readily suggest themselves, and would not escape the anticipations of those who are now dissatisfied with our decree, if they were not blinded by the heat of the immediate controversy.

If the theory contended for were correct, it would follow that the police juries of all the parishes are vested with irrevocable power to

levy limitless taxes, not merely for levees, but for "public buildings, bridges" or any other purpose falling within the broad term "works of public improvement," upon the vote of a mere numerical majority of infinitisimally small property taxpayers. Thinking men will not readily concede that such could be a proper construction of the Constitution.

We have not the slightest doubt that it was the intention of the framers of the Constitution that the extraordinary powers of special taxation permitted by article 209, like all other parochial powers, should be subjected to the direction, regulation and control of the General Assembly, which must provide the authority, mode and limit of their exercise, before they can be exerted by the parochial authorities.

We do not express or intimate any opinion hostile to the claim that the work done by the police jury in the present case, is a "work of public improvement" within the meaning of Art. 209, and that legislation in enforcement of that article might embrace such work. On these points, we reserve our opinion, until they shall arise in a proper case.

Rehearing refused.